# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| **NETSOC, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:18-CV-1809-N** |
| | § | |
| **MATCH GROUP, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT MATCH GROUP, LLC'S MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(B)(6) AND FED. R. CIV. P. 12(B)(7)
## <u>AND BRIEF IN SUPPORT THEREOF</u>

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................. 2

III.  LEGAL STANDARD ........................................................................................ 4

IV.   ARGUMENT ..................................................................................................... 5

    A.   NetSoc Fails to State a Claim for Indirect Infringement Because the Amended  Complaint Fails to Adequately Allege Intent ....................................... 5

    B.   NetSoc Fails to State a Claim for Willful Infringement ....................................... 7

    C.   The Claims Of The '107 Patent Are Invalid Under 35 U.S.C. § 101 ................... 9

        1.   The Claims Are Abstract ......................................................................... 10

        2.   The Claims Lack Meaningful Limitations That Restrict the Claims to a  Non-Routine and Specific Application ............................................. 11

        3.   The Amended Complaint Makes No Factual Allegations in Support of  Patent Eligibility ................................................................. 14

    D.   NetSoc Failed to Join Necessary Parties PlentyOfFish and Humor Rainbow ............................................................................................................ 15

        1.   Rule 12(b)(7) Requires Joinder of Necessary Parties ............................. 15

        2.   PlentyOfFish and Humor Rainbow are Necessary Parties Because They Offer Two of the Accused Products ................................................ 16

        3.   Any Claims of Infringement Against Humor Rainbow Must Be Dismissed  Because Venue Is Not Proper In This district ...................... 18

V.    CONCLUSION ................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc., v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)...................................................................14

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)...................................................................13

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
    No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014).......................7

*Albritton v. Acclarent, Inc.*,
    No. 3:16-CV-03340-M, 2017 WL 6628122 (N.D. Tex. Dec. 27, 2017) ..................5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)...........................................................................9, 10, 11, 12

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)...................................................................................1

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................4, 6

*Avocet Sport Tech., Inc. v. Garmin Int'l., Inc.*,
    No. C 11-04049 JW, 2012 WL 2343163 (N.D. Cal. June 5, 2012).......................6

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*,
    687 F.3d 1266 (Fed. Cir. 2012)...................................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................4, 6, 9

*Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*,
    729 F. Supp. 2d 789 (N.D. Tex. 2010) .........................................................8

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)...................................................................14

*Cont'l Circuits LLC v. Intel Corp.*,
    No. CV16-2026 PHX DGC, 2017 WL 2651709 (D. Ariz. June 19, 2017) ..............8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)...................................................................4

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-751-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015) .....................................6

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)............................................................................................18

*Davis Cos. v. Emerald Casino, Inc.*,
  268 F.3d 477 (7th Cir. 2001) ................................................................................................16

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1355 (Fed. Cir. 2016)......................................................................................11, 12

*Ferrer v. Chevron Corp.*,
  484 F.3d 776 (5th Cir. 2007) .................................................................................................4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016)........................................................................................................7, 8

*HS Resources, Inc. v. Wingate*,
  327 F.3d 432 (5th Cir. 2003) ................................................................................................15

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)..............................................................................................4

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017)..............................................................................................5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)...........................................................................................................9, 10

*Hood ex rel. Mississippi v. City of Memphis*,
  570 F.3d 625 (5th Cir. 2009) ................................................................................................16

*Mobile Enhancement Sols. LLC v. HTC Corp.*,
  No. 3:12-CV-00794-M, 2013 WL 12137006 (N.D. Tex. Mar. 6, 2013)..................................5

*NetSoc, LLC v. Match Group, Inc.*,
  2:18-cv-00217-RWS-RSP (E.D. Tex. May 22, 2018) (the "EDTX case") .........................2, 3

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*,
  No. 6:11-CV-495-LED, 2013 WL 12153575 (E.D. Tex. Mar. 25, 2013) ...............................7

*OIP Tech. Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)..............................................................................................5

*Promotional Techs., LLC v. Facebook, Inc.*,
  No. 3:11-CV-3488-P, 2012 WL 13026789 (N.D. Tex. Sept. 27, 2012)..................................6

*Realtime Data LLC v. EchoStar Corp.*,
  No. 6:17-CV-84 ........................................................................................................9

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672, 199 L. Ed. 2d
  535 (2018) .............................................................................................................11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017) ..........................................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...............................................................................................17

*Timberlake v. Synthes Spine, Inc.*,
  No. V-08-4, 2011 WL 2607044 (S.D. Tex. June 30, 2011)...................................16

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014)...............................................................................14

*ZitoVault, LLC v. Int'l Bus. Machines Corp.*,
  No. 3:16-CV-0962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018)...................17

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018)..............................................................................18

**Rules and Statutes**

28 U.S.C. § 1400(b) ........................................................................................................18, 19

35 U.S.C. § 101.......................................................................................................1, 4, 9, 10, 13

35 U.S.C. § 284...............................................................................................................8, 9

Fed. R. Civ. P. 19(a)(1)(B)(i)-(ii) ...................................................................................16

Fed. R. Civ. P. 19(a)(2)....................................................................................................16

Fed. R. Civ. P. 19(a)(3)...........................................................................................15, 16, 18, 19

Federal Rule of Civil Procedure 12(b)(6) ..............................................................1, 4, 5, 17, 19

Federal Rule of Civil Procedure 12(b)(7) ..............................................................2, 5, 15, 18, 19

Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) ..............................................1

Defendant Match Group, LLC ("Defendant" or "Match") moves the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7), to dismiss Plaintiff NetSoc, LLC's ("Plaintiff" or "NetSoc") Amended Complaint for Patent Infringement (Dkt. No. 7, "Amended Complaint") for failure to (1) state a claim upon which relief can be granted, and (2) join necessary parties.

## I.    **INTRODUCTION**

The Court should dismiss NetSoc's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because its allegations of indirect infringement and willful infringement are deficient under applicable case law. The law requires NetSoc to address each element of those causes of action and plead sufficient facts to show a plausible claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, NetSoc's Amended Complaint fails to

(1)    plead sufficient facts that Match had or has the requisite intent to induce infringement; or

(2)    plead any facts that Match is liable for willful infringement, but provides only a conclusory statement in its Prayer for Relief.

The Court should also dismiss NetSoc's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because the asserted patent, U.S. Patent No. 9,978,107 (the "'107 Patent," Ex. 1), fails to claim patent-eligible subject matter under 35 U.S.C. § 101. The claims of the '107 Patent do no more than combine a series of well-known steps—that are implemented on a general purpose computer using well-understood and routine functions. Consistent with the foregoing, the Amended Complaint does not factually allege the claimed invention is anything more than a combination of abstract ideas implemented on generic hardware, that does not solve a specific, identifiable problem with existing computer functionality.

Finally, the Court should dismiss NetSoc's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) because it accuses of infringement certain applications and websites, pof.com and okcupid.com, that Match does not own or operate.  The Court cannot accord complete relief between only NetSoc and Match, and resolving NetSoc's claims of infringement against the unnamed parties would impair their ability to protect their interests, and/or leave them exposed to substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  Therefore, the unnamed entities are indispensable parties under Rule 19.

NetSoc's failure to properly plead its Amended Complaint has and will materially prejudice Match's ability to prepare its defenses to NetSoc's claims.  Therefore, the Court should grant this Motion and dismiss NetSoc's claims.

II.    **FACTUAL BACKGROUND**

The '107 Patent issued on May 22, 2018.  The same day, NetSoc filed a complaint in the Eastern District of Texas against Match Group, Inc. (the "EDTX Complaint"), alleging infringement of the '107 Patent.  *See NetSoc, LLC v. Match Group, Inc.*, 2:18-cv-00217-RWS-RSP (E.D. Tex. May 22, 2018) (the "EDTX case").  In the EDTX Complaint, NetSoc erroneously alleged that Match Group, Inc. "maintains, operates, and administers" tinder.com, and has two principal places of business in the Eastern District of Texas.[1]  *See* EDTX Case, Dkt. No. 1 at ¶¶ 2, 9.  Match subsequently informed NetSoc that (1) tinder.com is operated by Match Group, LLC (i.e., not Match Group, Inc.), and (2) neither Match Group, LLC nor Match Group, Inc. have a

---

[1] NetSoc's EDTX Complaint alleged Match Group, Inc. has principal places of business at P.O. Box 940689, Plano, Texas 75094-0689 and 3001 E President George Bush Hwy, Richardson, Texas 75082-3542.  *See* EDTX Complaint at ¶ 2.  Neither address is correct.  Match Group, Inc.'s and Match Group, LLC's principal place of business is 8750 North Central Expressway, Suite 1400 Dallas, Texas 75231.

principal place of business in the Eastern District of Texas, and therefore, venue is not proper in that district.  *See, e.g.*, Decl. of Laurie Braddock ("Braddock Decl."), Ex. 2 at ¶¶ 3–4.

Based on the foregoing, counsel for NetSoc agreed to dismiss the EDTX case against Match Group, Inc. and file a complaint against Match Group, LLC in the Northern District of Texas.  On July 13, 2018, NetSoc filed an unopposed motion to dismiss the EDTX case (*see* EDTX case, Dkt. No. 8), which was granted on July 16, 2018.  *See* EDTX case, Dkt. No. 9.

On July 13, 2018, NetSoc filed its complaint against Match Group, LLC in the Northern District of Texas (the "Complaint").  *See* Dkt. No. 1.  While NetSoc named the proper defendant, it incorrectly alleged (for the first time) that Match has a principal place of business at 8300 Douglass Avenue, Suite 800, Dallas, Texas 75225.  *Id*. at ¶ 2.  Soon after informing counsel for Match that NetSoc has "several more patents to assert and products to accuse" (Aug. 7, 2018, Ramey email, Ex. 3), NetSoc filed its Amended Complaint.  Dkt. No. 7.  Confusingly, in its Amended Complaint, NetSoc again alleges that Match has principal places of business at P.O. Box 940689, Plano, Texas 75094-0689 and 3001 E President George Bush Hwy, Richardson, Texas 75082-3542 (*id*. at ¶ 2), i.e., the same addresses that NetSoc acknowledged as being incorrect in dismissing the EDTX case and filing its Complaint in this district.

Substantively, the Amended Complaint maintains allegations against tinder.com and adds allegations against match.com, pof.com, and okcupid.com (collectively the "Accused Products").  *See id*. at ¶¶ 9–23.  In response to NetSoc's new allegations, counsel for Match informed counsel for NetSoc that:

> . . . only match.com and Tinder are operated by Match Group, LLC. OkCupid is owned and operated by Humor Rainbow, Inc., which is based in New York and does not have a principal place of business in Texas. Plenty of Fish is owned and operated by Plentyoffish Media ULC, a Canadian entity.  Accordingly, venue is not proper in Texas with regard to

> OkCupid and any case would have to be brought in, e.g., New York. Also, the foregoing entities should be separately named.

*See* Sept. 6, 2018 Greeson email, Ex. 4. Accordingly, NetSoc has been notified that Match operates tinder.com and match.com, but not pof.com and okcupid.com—i.e.—pof.com is operated by PlentyOfFish Media ULC, a Canadian entity, and okcupid.com is owned by Humor Rainbow, Inc., a New York entity, both of which are necessary parties.

III.    **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, "a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. Dismissal under Rule 12(b)(6) is warranted when the complaint fails to state a claim that is factually plausible and legally viable even when all of its factual allegations are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). However, the Court need not presume "conclusory allegations, unwarranted factual inferences, or legal conclusions" to be true. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

When patent claims on their face are plainly directed to an abstract idea, it is proper to make a determination of patent validity under 35 U.S.C. § 101 at the pleading stage without necessity of claim construction, and the Federal Circuit has upheld such decisions. *See, e.g., Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1348–49 (Fed. Cir. 2015) (affirming dismissal under § 101 where claims directed to abstract idea of "retaining information in the navigation of online forms"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming dismissal where claims merely recited use of generic scanner and computer technology to "perform well-understood, routine, and conventional activities commonly

used in industry."); *OIP Tech. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363–64 (Fed. Cir. 2015) (affirming dismissal where claims directed to abstract idea of offer-based price optimization involving "fundamental economic concepts" and merely "requiring conventional computer activities or routine data-gathering steps").

Federal Rule of Civil Procedure 12(b)(7) allows for dismissal for "failure to join a party under Rule 19." Under Rule 19, all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue must be joined.

IV.    **ARGUMENT**

A.    **NetSoc Fails to State a Claim for Indirect Infringement Because the Amended Complaint Fails to Adequately Allege Intent**

NetSoc fails to plead sufficient facts that plausibly show Match induces infringement of the '107 Patent. For an allegation of inducement to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts plausibly showing that Defendant "specifically intended [another party] to infringe [the asserted patent] and knew that the [other party]'s acts constituted infringement." *Albritton v. Acclarent, Inc.*, No. 3:16-CV-03340-M, 2017 WL 6628122, at *5 (N.D. Tex. Dec. 27, 2017) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). For example, where a Complaint pleaded factual allegations showing a customer was provided user guides promoting a certain use, and that promoted use constituted infringement, claims of inducement were found to be sufficient. *See Mobile Enhancement Sols. LLC v. HTC Corp.*, No. 3:12-CV-00794-M, 2013 WL 12137006, at *4 (N.D. Tex. Mar. 6, 2013) (properly pleaded facts allowed for a "reasonable inference that [defendant] specifically intended its customers to take actions it knew would infringe the patents-in-suit."). "However, failing to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner, falls

short of satisfying Rule 8's notice requirement." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015).

Rather than plead factual allegations, for each Accused Product, NetSoc simply repeats the same generic conclusion (including the same typo):

> Match Group has and continues to induce infringement. Match Group has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., online dating services on the Internet] [sic] and related services that provide online dating services across the Internet such as to cause infringement of claims 1–11 of the '107 patent, literally or under the doctrine of equivalents. Moreover, Match Group has known of the '107 patent and the technology underlying it from at least the date of issuance of the patent.

*See* Dkt. No. 7 at ¶ 11 (tinder.com), ¶ 15 (pof.com), ¶ 19 (okcupid.com), ¶ 22 (match.com). While simply repeating the same paragraph, NetSoc does not identify an alleged instance of Match encouraging infringement or how Match allegedly instructs anyone to infringe.

NetSoc's bare allegation that "Match Group has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies) . . . on how to use its products and services . . ." is not sufficient to show Match intended a third party (e.g., customers) to infringe the '107 Patent. Allegations that a party simply provided its customers with instruction and training are not sufficient to plead intent to cause customers to infringe. *See Avocet Sport Tech., Inc. v. Garmin Int'l., Inc.*, No. C 11-04049 JW, 2012 WL 2343163 (N.D. Cal. June 5, 2012) (granting motion to dismiss where patentee only alleges facts showing it provided customers with instructions and training). Here, NetSoc has not pleaded *any* factual allegations showing that Match provided such instructions. Therefore, NetSoc's bare assertions, which are made without factual support, do not sufficiently allege encouragement or instruction to infringe. *See Iqbal*, 556 U.S. 662 at 678 (holding that "naked assertions devoid of 'further factual enhancement'" are insufficient to state a claim) (quoting *Twombly*, 550 U.S. at 555); *Promotional Techs., LLC v.*

*Facebook, Inc.*, No. 3:11-CV-3488-P, 2012 WL 13026789, at *5 (N.D. Tex. Sept. 27, 2012) ("A patentee must provide factual allegations in support of the elements of inducement that have some evidentiary support.").

While NetSoc alleges that "Match Group has known of the '107 Patent and the technology underlying it from at least the date of issuance of the patent," mere knowledge of the '107 Patent cannot demonstrate Match had knowledge of any alleged third-party infringement. *See, e.g.*, *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, No. 6:11-CV-495-LED, 2013 WL 12153575, at *3 (E.D. Tex. Mar. 25, 2013) ("Specifically, [plaintiff] alleges that [defendant] acted '[w]ith knowledge of the Patents,' however there are no facts present in the complaint alleging whether, when, or how defendant became aware of the patents-in-suit.  Such conclusory allegations regarding knowledge are insufficient."); *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. W:13-CV-362, 2014 WL 12551207, at *4 (W.D. Tex. Apr. 30, 2014) ("While Plaintiff may have offered facts in its response for the Court to conclude that it was *conceivable* that [defendant] had knowledge of the [asserted patent], the complaint lacks facts that make such knowledge *plausible.*").  NetSoc does not offer even a conclusory statement alleging Match knew of a third-party (e.g., customer) infringing the '107 Patent—which, without more, would also be insufficient.

In view of the foregoing, the Amended Complaint fails to plead facts giving rise to a reasonable inference that Match specifically intended a third party to infringe the '107 Patent or *any facts* that plausibly show Match knew a third party's acts constituted infringement.  Therefore, the Court should dismiss NetSoc's indirect infringement claims.

## B. NetSoc Fails to State a Claim for Willful Infringement

NetSoc fails to plead sufficient facts that plausibly show Match willfully infringes the '107 Patent.  In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, the Supreme Court emphasized that enhanced damages are "not to be meted out in a typical infringement case, but are instead designed

as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). Although *Halo* rejected a bright-line test for awarding enhanced damages, it did not alter the fact that an award for enhanced damages requires egregious behavior: "Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1934.

Allegations of willful infringement, like all patent infringement allegations, must be adequately pleaded with factual support. Courts "have universally—either in word or deed—required plaintiffs to plead facts showing willfulness." *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 2651709, at *7 (D. Ariz. June 19, 2017) (citing multiple district court cases where sufficient factual allegations were required to show willfulness).

NetSoc fails to plead any facts indicating that Match willfully infringes the '107 Patent, let alone any facts suggesting this is an egregious case warranting enhanced damages. Instead, the Amended Complaint merely concludes in its Prayer for Relief that the Court should find willfulness:

> declare Defendant's infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284.

Dkt. No. 7 at 83, Prayer for Relief at (e).

Merely requesting a finding of willful infringement in a Prayer for Relief without any factual basis does not comport with *Halo*. Courts in this district have dismissed allegations of willful infringement under similar circumstances. *See Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 800 (N.D. Tex. 2010) ("[T]he complaint must provide more than labels and conclusions" to support a claim for willfulness and "[d]espite a review of the Complaint, the court has found no facts, and plaintiffs have directed the court's attention to none,

that support the claim of willfulness.") (citing *Twombly*, 550 U.S. at 544, 561–63).  In the Eastern District of Texas, where, as here, a plaintiff requested a finding of willful infringement only in its Prayer for Relief, the Court reached the same conclusion:

> There are not sufficient well-pleaded facts in the Amended Complaint to give rise to a plausible inference that [Defendant] acted—or will in the future act—recklessly despite an objectively high risk of infringement.  In these circumstances, *a solitary request for treble damages pursuant to § 284 in the Prayer for Relief is insufficient to give rise to a plausible claim of willful infringement*.

*Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-84 RWS-JDL, 2017 WL 4693512 (E.D. Tex. July 19, 2017) (applying the *Twombly/Iqbal* pleading standard and pre-*Halo* willfulness standard), report and recommendation adopted, No. 6:17-CV-84, 2017 WL 3599537 (E.D. Tex. Aug. 21, 2017) (emphasis added).  Therefore, the Court should dismiss NetSoc's willful infringement claims.

### C.    The Claims Of The '107 Patent Are Invalid Under 35 U.S.C. § 101

The Supreme Court has set forth a two-part test for patent eligibility.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  First, the court must determine "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  *Id*. at 2355.  If so, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Id*. (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012)).  The Court has described the second step as a search for an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id*. (quoting *Mayo*, 566 U.S. 66 at 72–73).

The claims of the '107 Patent are invalid under § 101 because they (1) are directed to abstract ideas; and (2) lack meaningful limitations that restrict the claims to a non-routine and specific application of the abstract idea, *i.e.*, the claims lack additional elements that "'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 566 U.S. 66 at 78).

1.    <u>The Claims Are Abstract</u>

The '107 Patent has two (2) independent claims: claim 1 (a method claim) and claim 6 (a system claim). Independent claim 1, which is representative, recites:

> 1. A method for establishing a social network, the method being implemented on a network computer system and comprising:
>
> ***maintaining a list*** comprising a plurality of participants, wherein each participant in the plurality of participants corresponds to one or more individuals, wherein the list also includes information associated with at least one of each participant or the one or more individuals that correspond to each participant;
>
> ***presenting*** a user with ***an interface*** from which the user makes a selection of a category from a plurality of categories;
>
> in response to receiving the selection of the category by the user,
>
> ***displaying***, for the user, some of the ***information*** associated with each of multiple participants from the plurality of participants which match the selection of the category by the user, while shielding contact information associated with each of the multiple participants;
>
> wherein displaying some of the information associated with each of the multiple participants is based at least in part on a rating of individual participants in the plurality of participants;
>
> ***enabling*** the user to send an ***inquiry message*** to one or more of the multiple participants, while shielding the contact information from the user, the contact information including any messaging identifier that is associated with each of the one or more participants;
>
> ***tracking a response time*** of each of the one or more participants who received the message from the user; and

> ***updating the rating*** associated with each of the one or more participants
> based at least in part on the tracked response time.

(emphasis added).  In essence, the claims involve (1) presenting a list of participants to a user

based on selection criteria and a rating; (2) sending a message to a participant while allowing

limited contact with the participant; and (3) updating the rating based on the participant's response

time, each of which are abstract concepts.  The combination of such elements does not make the

claims, as a whole, any less abstract.  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327

(Fed. Cir. 2017), cert. denied, 138 S. Ct. 672, 199 L. Ed. 2d 535 (2018) ("Adding one abstract idea

(math) to another abstract idea (encoding and decoding) does not render the claim non-abstract.").

### 2.    The Claims Lack Meaningful Limitations That Restrict the Claims to a Non-Routine and Specific Application

The '107 Patent claims have no "inventive concept" that is "significantly more" than the

abstract idea, and therefore fail the second step of the *Alice* test.  *See Alice*, 134 S. Ct. at 2357.

Read in isolation or as an ordered combination, the claim elements fail to transform the claimed

abstract ideas into patent-eligible subject matter because they do nothing more than state the

abstract idea and apply it using conventional computer hardware.  *See id*. at 2357–60.  Generic,

high-level limitations, which provide no guidance or restriction on the way they are accomplished,

do not provide an inventive concept.  Using "off-the-shelf, conventional computer, network, and

display technology" is "not even arguably inventive" and "'insufficient to pass the test of an

inventive concept in the application' of an abstract idea."  *Elec. Power Grp., LLC v. Alstom S.A.*,

830 F.3d 1355 (Fed. Cir. 2016) (citations omitted).

As discussed, the claim features embody routine steps performed using generic computer

technology when rating participants, allowing a user to send a message to the participants, and

updating the rating based on the participant's response time to the message.  The claims recite

neither a specific field of use nor any specialized components for performing the foregoing steps.

Also, the mere automation and efficiency permitted by performing the abstract ideas on a generic computer system, as set forth in claims 6–11, does not transform the nature of the claims into patentable subject matter.  *See Alice*, 134 S. Ct. at 2358.

Further, the '107 Patent describes only generic modules receiving multiple inputs from a user and allowing the user to make selections—merely automating what could be done by a human.  *See, e.g.*, '107 Patent, 5:54–6:50.  Consistent with the foregoing, the claim features amount to nothing more than a generic computer implementing an abstract idea using well-known concepts.  In fact, the '107 Patent repeatedly states that the claimed invention can be implemented in generic hardware and software:

> A module may be implemented on a client or on a server, or distributed between clients, servers, or amongst a client-server . . . .  [O]ne or more embodiments described herein may be implemented through the use of instructions that are executable by one or more processors.  These instructions may be carried on a computer-readable medium . . . .  Examples of computer-readable mediums include permanent memory storage devices, such as hard drives on personal computers or servers.

'107 Patent, 2:57–3:21.  Even "specific examples" for communications are generic:

> In one variation, it is also possible to shield the identity of the participant, or the end person who will be communicating with the user.  Specific examples of communications over an online medium include the following: email exchange, instant messaging, web blog (e.g. exchange of web blog URLs), video/audio broadcasts (including over data networks).  It is also contemplated that communications will be possible over mediums that are not online (e.g. offline, telephone, in-person).

*Id*. at 8:58–67.  Such generic claim features do not transform an abstract idea into patentable subject matter.  *See, e.g.*, *Elec. Power Grp.* at 1355. ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."); *id.* ("The claims at issue here do not require an arguably inventive device or technique for displaying

information . . . . Nor do the claims here require an arguably inventive distribution of functionality within a network . . . .").

It should also be appreciated that the Federal Circuit has held claims reciting even more specific implementation details and hardware components than those in the '107 to be patent-ineligible. The claims in *Accenture* includes the features of using software "triggered" to generate and assign tasks in an insurance organization upon the occurrence of certain events. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338–39 (Fed. Cir. 2013). The claims also recited multiple components—including a server, several specific databases (to "stor[e]" the information), an "event processor," a "task engine," a "task assistant," and a "client component" that "transmits and receives data"—but the Federal Circuit held them patent-ineligible because they were "generalized software components arranged to implement an abstract concept." *Id.* at 1338–39, 1343–45. Similarly, the claims in *Bancorp* were ineligible—even though they "require[d] particular computing devices, such as a 'generator,' a 'calculator,' and 'digital storage'"—because appending such general components did not "salvage an otherwise patent-ineligible process." *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1274–78 (Fed. Cir. 2012).

Likewise, none of the dependent claims add any meaningful limitations sufficient to bring the abstract ideas of the independent claims within the scope of section 101. This is because the dependent claims, which are recited at a high level of generality, simply embody well-known, routine, and conventional functions that do not depart in any substantive way from the abstract concepts of (1) presenting a list of participants based on selection criteria and rating; (2) allowing limited contact with a participant; and (3) updating the rating based on participant's response time.

For example, claims 2 and 7 specify a user's category selection to include geographic location.  Claims 3 and 8 include displaying an image of a participant.  Claims 4 and 9 include identifying information based on a referral.  Claims 5 and 10 include displaying participant information based on rating.  Lastly, claim 11 merely adds that the computer system of claim 6 corresponds to a server, or a combination of servers.  Adding a server or other "ubiquitous information-transmitting medium" does not transform otherwise conventional steps into patent eligible subject matter.  *See, e.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716–17 (Fed. Cir. 2014).  Hence, the dependent claims do nothing more than append use of well-known technologies to the abstract ideas embodied in the independent claims.  Accordingly, the dependent claims offer nothing to support validity of the '107 Patent.

    3. <u>The Amended Complaint Makes No Factual Allegations in Support of Patent Eligibility</u>

While patent eligibility is a question of law, whether a claimed invention is "well-understood, routine, and conventional," is a question of fact.  *See*, *e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369–70 (Fed. Cir. 2018) (reversing in part order invalidating claims on a motion for summary judgment where there existed a genuine factual dispute about whether claims merely described "well-understood, routine, and conventional activities."); *Aatrix Software, Inc., v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("Whether the claim elements or the claimed combination are well-understood, routine, [or] conventional is a question of fact").  However, the Amended Complaint is devoid of any factual allegation that the claimed invention is non-conventional.  Further, the Amended Complaint makes no factual allegation that the claimed invention solves a problem with existing computer functionality.

**D.**      **NetSoc Failed to Join Necessary Parties PlentyOfFish and Humor Rainbow**

NetSoc accuses pof.com and okcupid.com of infringement, but neither are owned or operated by Match. Instead, PlentyOfFish Media ULC ("PlentyOfFish"), which is a Canadian entity, owns and operates pof.com; and Humor Rainbow, Inc. ("Humor Rainbow"), which is based in New York and does not have a place of business in Texas, owns and operates okcupid.com. Braddock Decl., Ex. 5 at ¶¶ 3–7. Therefore, with respect to PlentyOfFish, it must be joined under Rule 19 or NetSoc's allegations against pof.com must be dismissed; and with respect to Humor Rainbow, NetSoc's claims against okcupid.com must be dismissed in this district because joinder would make venue improper. *See* Fed. R. Civ. P. 19(a)(3).

1.      Rule 12(b)(7) Requires Joinder of Necessary Parties

Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party under Rule 19." Rule 19 "provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue . . . [and] the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (footnotes and citations omitted).

Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry. The district court must first determine whether the party should be added under the requirements of Rule 19(a). Rule 19(a)(1) requires that a person subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009) (quoting Fed. R. Civ. P. 19(a)(1)).

Furthermore, "[i]f a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). However, "[i]f a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party." Fed. R. Civ. P. 19(a)(3). "In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence." *Timberlake v. Synthes Spine, Inc.*, No. V-08-4, 2011 WL 2607044, at *2 (S.D. Tex. June 30, 2011) (quoting *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n. 4 (7th Cir. 2001)).

2.      PlentyOfFish and Humor Rainbow are Necessary Parties Because They
        Offer Two of the Accused Products

PlentyOfFish and Humor Rainbow are necessary parties under Rule 19(a)(1) because they each own and operate at least one Accused Product. Accordingly, a determination of infringement would obviously impair their ability to protect their interests, and/or leave them exposed to substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B)(i)–(ii).

NetSoc incorrectly alleges that Match "maintains, operates, and administers websites" at www.tinder.com (Dkt. No. 7 at ¶ 9), www.pof.com (*id.* at ¶ 11), www.okcupid.com (*id.* at ¶ 17), and www.match.com (*id.* at ¶ 20). NetSoc further alleges that each product "infringes one or more claims of the '107 Patent." *Id.* at ¶¶ 9, 11, 17, 20.

To the contrary, Match does not maintain, operate, or administer www.pof.com or www.okcupid.com. Instead, pof.com is owned by PlentyOfFish and okcupid.com is owned by Humor Rainbow. *See* Braddock Decl., Ex. 5 at ¶¶ 3, 5. It naturally follows that PlentyOfFish and Humor Rainbow must be afforded an opportunity to defend against NetSoc's claims of

infringement directed to products they own and operate.  Therefore, considering NetSoc's current allegations, PlentyOfFish and Humor Rainbow are necessary parties.

It should be appreciated that this information was publicly available when NetSoc filed its Amended Complaint and is listed in each website's Terms of Use Agreement.  *See* PlentyOfFish Terms of Use Agreement, Ex. 6 ("[T]hese Terms of Use are between you and Plentyoffish Media ULC ('POF').");[2] Humor Rainbow Terms of Use Agreement, Ex. 7 ("This website (the 'Website') is operated by Humor Rainbow, Inc.").[3],[4]  Moreover, Match's counsel informed NetSoc's counsel of these facts shortly after NetSoc filed the Amended Complaint:

> [O]nly match.com and Tinder are operated by Match Group, LLC. OkCupid is owned and operated by Humor Rainbow, Inc., which is based in New York and does not have a principal place of business in Texas. Plenty of Fish is owned and operated by Plentyoffish Media ULC, a Canadian entity.  Accordingly, venue is not proper in Texas with regard to OkCupid and any case would have to be brought in, e.g., New York.  Also, the foregoing entities should be separately named.

Sept. 6, 2018 Greeson email, Ex. 4.

Because NetSoc has refused to join Humor Rainbow or PlentyOfFish, *and* because NetSoc has failed to plausibly allege that Match infringes the '107 Patent via the distribution of

---

[2]  Available  at   https://web.archive.org/web/20180623112420/https://www.pof.com/terms.aspx (last accessed Sept. 25, 2018).

[3]  Available at https://web.archive.org/web/20180617224609/https://www.okcupid.com/legal/terms (last accessed Sept. 25, 2018).

[4]  This Court may take judicial notice of these publicly available websites when resolving Match's Motion to Dismiss.  *See ZitoVault, LLC v. Int'l Bus. Machines Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971131, at *2 n.4 (N.D. Tex. Mar. 29, 2018) ("When reviewing a motion to dismiss, a court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (citations omitted).

okcupid.com and pof.com,[5] pursuant to Federal Rule of Civil Procedure 12(b)(7), the Court should dismiss NetSoc's claims of infringement related to okcupid.com and pof.com.

> 3.    Any Claims of Infringement Against Humor Rainbow Must Be Dismissed Because Venue Is Not Proper In This district

Venue is improper in this district with respect to Humor Rainbow.  Therefore, under Rule 19(a)(iii), if NetSoc attempts to join Humor Rainbow in this litigation, its claims of infringement should be dismissed.  *See* Fed. R. Civ. P. 19(a)(3) ("If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.").

An action for patent infringement may only be brought in a district where the defendant resides or has a regular and established place of business:  "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  A corporate defendant resides in its state of incorporation:  "[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517, (2017).  To have a "regular and established place of business" in a district, "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  Moreover, the plaintiff has the burden to prove venue is proper.  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018) ("[U]pon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue.").

---

[5] NetSoc has failed to plausibly allege that pof.com and okcupid.com are attributable to Match. There is no sufficient pleading that Match maintains these websites, and NetSoc has not plausibly pleaded that Match is liable for any infringement of these websites.

Humor Rainbow is a New York corporation with its principal place of business in New York.  Braddock Decl., Ex. 5 at ¶ 6.  It does not own or lease any property in Texas, and has no employees in Texas.  *Id.* at ¶ 7.  Therefore this district is an improper venue with respect to Humor Rainbow since it does not reside or have a regular and established place of business in this district.  *See* 28 U.S.C. § 1400(b).

Accordingly, the Court should dismiss NetSoc's infringement claims directed to okcupid.com (which is owned and operated by Humor Rainbow).  Further, even if NetSoc is allowed to further amend its complaint or join additional parties, allegations of infringement cannot be properly brought against Humor Rainbow in this district.  Any allegations of infringement against Humor Rainbow must be resolved in a proper forum.  *See* Fed. R. Civ. P. 19(a)(3) ("If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.").

V.    **<u>CONCLUSION</u>**

In view of the foregoing, the Court should dismiss NetSoc's Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted and pursuant to Rule 12(b)(7) for failure to join necessary parties.

Date:  September 25, 2018

Respectfully submitted,

By ___/s/ Robert Greeson_____
       Robert Greeson

**NORTON ROSE FULBRIGHT US LLP**
Robert Greeson (Texas Bar No. 24045979)
**Lead Attorney**
robert.greeson@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel:    (214) 855-7430
Fax:   (214) 855-8200

Erik Janitens (Texas Bar No. 24097878) (*to be admitted*)
erik.janitens@nortonrosefulbright.com
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Tel:    (713) 651-3629
Fax:   (713) 651-5246

**Attorneys for Defendant Match Group, LLC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 25, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

_____/s/Robert Greeson_____
       Robert Greeson

73453934.2

-20-