IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NETSOC, LLC, §
 §
   Plaintiff, §
 §
v. § Civil Action No. 3:18-CV-01809-N
 §
MATCH GROUP, LLC, *et al.*, §
 §
   Defendants. §

# MEMORANDUM OPINION AND ORDER

This Order addresses Defendants, Match Group, LLC, Plentyoffish Media ULC, and Humor Rainbow Inc.'s motions to dismiss [32] [33] [34]. Because the Court holds that Plaintiff NetSoc, LLC's ("NetSoc") patent claims are directed to only ineligible subject matter under 35 U.S.C. § 101, the Court grants Defendants' motion.

## I. ORIGINS OF THE DISPUTE

This dispute concerns the technology driving several online dating platforms. NetSoc is a Texas company holding U.S. Patent No. 9,978,107 ("the '107 patent") entitled "Method and System for Establishing and Using a Social Network to Facilitate People in Life Issues." The '107 patent claims:

> a method for establishing a social network, the method being implemented on a network computer system and comprising:
> • maintaining a list comprising a plurality of participants,
>   • wherein each participant in the plurality of participants corresponds to one or more individuals,
>   • wherein the list also includes information associated with at least one of each participant or the one or more individuals that correspond to each participant;

- presenting a user with an interface from which the user makes a selection of a category from a plurality of categories;
- in response to receiving the selection of the category by the user, displaying, for the user, some of the information associated with each of multiple participants from the plurality of participants which match the selection of the category by the user, while shielding contact information associated with each of the multiple participants;
  - wherein displaying some of the information associated with each of the multiple participants is based at least in part on a rating of individual participants in the plurality of participants;
- enabling the user to send an inquiry message to one or more of the multiple participants, while shielding the contact information from the user, the contact information including any messaging identifier that is associated with each of the one or more participants;
- tracking a response time of each of the one or more participants who received the message from the user; and
- updating the rating associated with each of the one or more participants based at least in part on the tracked response time.

The '107 patent, c.17, l.15 [1-1].

NetSoc claims that Defendants infringed on this patent by operating several different online dating platforms, including Tinder and OkCupid. Defendants now move to dismiss the action under Federal Rule of Civil Procedure 12(b)(6).

## II. THE RULE 12(B)(6) STANDARD

When considering a rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts

well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

Patent eligibility under section 101 may be determined at the rule 12(b)(6) stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

For a patent to be eligible under section 101, it must past the two-step test articulated in *Alice Corp. Pty. Ltd. v. CLS Bank Intern*, 573 U.S. 208, 217-18 (2014). First, the Court must determine whether the claims are directed to one of the three patent ineligible concepts under section 101: laws of nature, natural phenomena, or abstract ideas. *Id.* If so, the Court must "consider the elements of each claim both individually and as an ordered combination to determine whether additional elements transform the nature of the claim into a patent-eligible application." *Id.* (quotations omitted). The Supreme Court describes this second step as a "search for an inventive concept — i.e. an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (quotations omitted).

## II. THE '107 PATENT FAILS THE ALICE TEST

"The abstract ideas category embodies the longstanding rule that an idea of itself is not patentable." *Id.* at 218 (quotations omitted). Though its precise boundaries are difficult to pinpoint, the category is not confined to "preexisting, fundamental truths that exist in principle apart from any human action." *Id.* at 220 (quotations omitted). Algorithms that merely convert binary code, methods for risk hedging, and various systems for collecting information, analyzing it, and displaying results have all been included in the category. *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010); *SAP America, Inc. v. Investipic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2019). What ultimately matters is the focus of the claim. If the claims are not directed at creating something physical, or lack the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it," they are likely directed at only abstract ideas. *SAP*, 898 F.3d at 1167-68 (collecting cases).

The '107 patent claims fall into this category. The focus of the claims can be summarized as: (1) maintaining a list of participants, (2) presenting a user with a list of other participants based on selection criteria, (3) allowing the user to have limited contact with chosen participants, and (4) updating the rating of a participant based on tracked response times. The claims are not directed to the creation of something physical; nor do they contain the concrete specificity the Federal Circuit imagined in *SAP*. Instead, they are predicated on presenting results of data collection and analysis — something that the Federal Circuit has explicitly said resides squarely in the realm of abstract ideas. *See id.* at 1167; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Accordingly, the Court

holds that the '107 patent is directed only to the ineligible subject matter of abstract ideas, and thus fails the first step of the *Alice* test.

In the search for an inventive concept, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent eligible invention." *Alice*, 573 U.S. at 223. If the claims do not require "anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information," they fail the second step of the *Alice* test. *Elec. Power Grp.*, 830 F.3d at 1355.

This is precisely the issue with the '107 patent. No sort of specific field or specialized component is required to reach the desired result. In fact, NetSoc makes no suggestion — in the patent or in its briefing — that its system for collecting participant data, analyzing it, and presenting it to the users requires anything other than conventional computer hardware. This is well below the threshold that the Federal Circuit has established for an inventive concept. *See, e.g., Accenture Glob. Servs., GmbH v. Guideware Software, Inc.*, 728 F.3d 1336, 1338-39 (Fed. Cir. 2013) (holding that claims lacked an inventive concept despite identifying several specific components used in the application); *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1274-78 (Fed. Cir. 2012) (same).

Accordingly, the Court holds that the '107 patent fails both steps of the *Alice* test. Even taking NetSoc's complaint at face value, its claims are directed to only patent ineligible abstract ideas, and fail to articulate an inventive concept that transforms those ideas into patent eligible subject matter. The Court thus grants Defendants' motion and dismisses NetSoc's claims with prejudice.

Signed July 22, 2019.

David C. Godbey
United States District Judge